UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-

YASSA ASHBURN, JAMAL LAURENT, and
TREVELLE MERRITT,

                  Defendants.
-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CR-0303 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

This Memorandum and Order addresses Defendant Jamal Laurent's various motions to suppress or exclude certain evidence related to the discharge of a firearm from his bedroom on June 21, 2010. The court presumes familiarity with the facts regarding the incident that occurred that day, as well as the charges and alleged conduct underlying the instant criminal prosecution. (See May 5, 2014, Mem. & Order (Dkt. 141) at 4-7 (providing factual background regarding the events of June 21, 2010); Dec. 30, 2014, Mem. & Order (Dkt. 252) at 1-2 (outlining criminal charges and alleged conduct in this case).) For the reasons that follow, Laurent's motions to suppress or exclude this evidence are DENIED.

**I.    BACKGROUND**

In its Memorandum and Order dated May 5, 2014, the court denied Laurent's motion to suppress a 9 mm Smith & Wesson semi-automatic handgun (the "handgun") seized from his bedroom on June 21, 2010. (Dkt. 141 at 5.) The court also directed the Government to advise the court whether it intended to offer certain additional evidence that officers of the New York Police Department ("NYPD") had recovered from Laurent's bedroom that day. (Id. at 14-15.) This additional evidence consisted of 13 rounds of ammunition recovered from the magazine of

1

the handgun, one spent round of ammunition (more specifically, a bullet fragment),[1] and a bag of marijuana. (Id. at 4.) By letter dated July 3, 2014, the Government indicated that it planned to introduce the 13 rounds of ammunition and the bullet fragment, but not the marijuana. (July 3, 2014, Gov't Ltr. (Dkt. 150) at 1-2.)

Laurent responded to the Government's letter on September 2, 2014, arguing on several grounds that the ammunition and bullet fragment—as well as all other evidence related to the discharge of the firearm on June 21, 2010, aside from the handgun—should be excluded at trial. (Reply Mem. in Supp. of Def.'s Mot. to Suppress ("Def.'s Reply Mem.") (Dkt. 177) at 2-4.) The Government submitted a reply responding to Laurent's Fourth Amendment claim and stating that it would address his remaining arguments in its forthcoming motion to admit enterprise evidence, prior bad acts, and uncharged conduct. (Sept. 19, 2014, Gov't Ltr. (Dkt. 184).) On October 3, 2014, the Government filed its Motion in Limine to Admit Evidence of Other Acts, in which the Government indicated that it anticipated proving at trial, among other things, that the handgun and ammunition were recovered from Laurent's room on June 21, 2010, and that the handgun had been fired by Laurent earlier that day. (Mem. in Supp. of Gov't's Mot. to Admit Evid. of Other Acts ("Gov't Mot. to Admit Other Acts") (Dkt. 197) at 10.) Laurent responded to the Government's Motion to Admit Other Acts in a letter dated November 11, 2014, in which he reiterated his argument that the ammunition, the bullet fragment, and all testimony regarding the events of June 21, 2010, should be excluded. (Nov. 11, 2014, Def.'s Supplemental Ltr. ("Def.'s Resp. in Opp'n") (Dkt. 223) at 2.) The Government replied on November 21, 2014 (Nov. 21,

---

[1] In its May 5, 2014, Memorandum and Order, the court referred to this spent round of ammunition as a "shell casing," reflecting the terminology used in Defendant Laurent's January 31, 2014, motion to suppress the handgun. (See, e.g., Dkt. 141 at 4 (citing Mot. to Suppress (Dkts. 114-116)).) The Government subsequently informed the court that the spent round of ammunition was actually a bullet fragment that was recovered from the room adjacent to Laurent's bedroom on June 21, 2010. (Sept. 19, 2014, Gov't Ltr. (Dkt. 184) at 1-2 n.1.) The Government also indicated that it was not aware that a separate shell casing was recovered from Laurent's room that day, and believed Laurent's reference to this item to have been in error. (Id.) Hereinafter, the court will refer to the spent round of ammunition as the bullet fragment.

2

2014, Gov't Ltr. ("Gov't's Reply") (Dkt. 230)), and Laurent filed a sur-reply on December 1, 2014 (Dec. 1, 2014, Def. Ltr. ("Def.'s Sur-Reply") (Dkt. 233)).

## II. DISCUSSION

Laurent challenges the admissibility of the ammunition, the bullet fragment, and all testimony regarding the events of June 21, 2010, on relevance grounds, among others. (See, e.g., Def.'s Resp. in Opp'n at 2 ("Although the Defense recognizes that the Court has denied its motion to suppress the gun itself . . . the ammunition, bullet fragment, and all testimony concerning the events of June 21, 2010, leading to the seizure of the firearm would add nothing relevant to the Government's case and should be excluded as irrelevant under [Federal Rule of Evidence] 402 . . . .").) As a result, the court first considers Laurent's motion to exclude all testimony related to the incident on June 21, 2010, before addressing Laurent's motion to suppress or exclude the 13 rounds of ammunition found in the magazine of the handgun and the bullet fragment recovered from the room adjacent to Laurent's bedroom.

### A. Motion to Exclude Testimony Regarding the Events of June 21, 2010

Laurent argues that testimony regarding the events of June 21, 2010, is inadmissible because: (1) it is irrelevant under Federal Rules of Evidence 401 and 402; (2) it is not offered for a proper purpose under Rule 404(b); and (3) pursuant to Rule 403, the probative value of this testimony is substantially outweighed by the danger of unfair prejudice, confusion, and wasted time. For the reasons discussed below, the court finds this testimony to be relevant and admissible as direct evidence of a charged crime, and furthermore, that it is not barred by Rule 403. As a result, the court declines to consider Laurent's argument that it should be excluded pursuant to Rule 404(b).[2]

---

[2] See, e.g., United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) ("[E]vidence of uncharged criminal activity is not considered 'other crimes' evidence under [Rule] 404(b) if it 'arose out of the same transaction or series of

3

1. <u>Relevance</u>

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; see also Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Laurent argues that no aspect of the circumstances under which the police came to his residence on June 21, 2010, would make a material fact more or less probable. (Def.'s Reply Mem. at 11.) According to Laurent, this is because whether he possessed or discharged the handgun on that date "has no bearing on his guilt or innocence of the crimes charged in this Indictment and does not tend, therefore, to make any material fact more or less likely." (<u>Id.</u>) In particular, Laurent asserts that there are no allegations that the residence in question, 1445 Schenectady Avenue, Brooklyn, New York, is related to any Six Tre activity. (Def.'s Resp. in Opp'n at 2.) Nor, as he contends, did the incident—which was "by all accounts an accident"—further any gang-related purpose. (<u>Id.</u>) Consequently, Laurent maintains, testimony about the events of June 21, 2010, should be excluded not only because it does not relate to any of the charged offenses, but also

---

transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'" (alterations in original) (quoting <u>United States v. Weeks</u>, 716 F.2d 830, 832 (11th Cir. 1983))). In <u>Towne</u>, the defendant was convicted of receiving and possessing various firearms after a prior felony conviction. <u>Id.</u> at 881. On appeal, the defendant challenged the district court's decision to admit evidence of the defendant's possession of a Smith & Wesson pistol on days other than the single date specifically charged in the indictment, without providing a limiting instruction pursuant to Federal Rule of Evidence 105. <u>Id.</u> at 885-86. The Second Circuit affirmed, noting that the evidence was admitted to show that it was the defendant and not someone else who possessed the weapon, and that the challenged evidence was therefore not "other crimes" evidence. <u>Id.</u> at 886. For similar reasons, the court concludes here that testimony regarding the events of June 21, 2010, is not "other acts" evidence. <u>See infra</u> Part II.A.1.

Even if the court were to evaluate the admissibility of the testimony under Rule 404, it seems readily apparent that testimony regarding these events would be admissible as evidence of opportunity under Rule 404(b)(2). <u>See, e.g.</u>, <u>United States v. Robinson</u>, 560 F.2d 507, 512-13 (2d Cir. 1977) (en banc) (defendant's possession of a .38 caliber rifle when he was arrested "some weeks" after an armed bank robbery, with which he was charged, was admissible under Rule 404 on the grounds that it tended to show he had the "opportunity" to commit the crime, "since he had access to an instrument similar to that used to commit it"); <u>United States v. Taylor</u>, 767 F. Supp. 2d 428, 438 (S.D.N.Y. 2010) (citing <u>Robinson</u>, 560 F.2d at 513). Here, as the court's discussion illustrates, evidence that Laurent fired the handgun on June 21, 2010, tends to show that he owned and possessed the gun that date, which makes it more probable that he possessed the gun when it was used in the murder of Brent Duncan on June 19, 2010. <u>See infra</u> Part II.A.1. However, because the court finds the testimony to be admissible as direct evidence of a charged crime, no limiting instruction is required. <u>Cf.</u> Fed. R. Evid. 105.

4

because it does not constitute background evidence with respect to the alleged criminal enterprise. (Def.'s Sur-Reply at 2.)

As the Government points out, however, Laurent is charged in various counts of the Fourth Superseding Indictment (Superseding Indictment (S-4) (the "Indictment") (Dkt. 237)), with committing the murder of Brent Duncan on or about June 19, 2010. (See Gov't Mot. to Admit Other Acts at 10; Indictment ¶¶ 7-8, 12, 32-34, 39-40.)[3] In support of these charges, the Government anticipates offering at trial expert testimony that the handgun recovered from Laurent's bedroom was the same gun used in Duncan's murder two days earlier.[4] (Gov't's Reply at 4.) Moreover, the Government reasons, the fact that Laurent had fired a bullet through the wall of his bedroom "minutes before it was recovered by responding police officers" is proof that the handgun belonged to Laurent, and not that he was "just holding it for someone else, as [he] is likely to argue at trial." (Id.) Accordingly, the Government's position appears to be that testimony related to the events of June 21, 2010, is relevant and therefore admissible as direct evidence of Laurent's ownership and possession of the weapon used in a murder he is alleged in the Indictment to have committed just two days earlier. (See id.)

In response, Laurent disputes the Government's inference that the discharge of the firearm from his bedroom establishes Laurent's ownership and possession of the weapon. (See Def.'s Sur-Reply at 2.) First, Laurent argues that "it is obvious, that someone does not necessarily own a weapon which he discharges." (Id. at 3.) Second, Laurent contends that a

---

[3] Specifically, Laurent is charged with racketeering in Count One, which alleges in Racketeering Act 4 that Laurent committed the murder of Brent Duncan as a predicate act. (Indictment ¶¶ 7-8, 12; see also id. ¶¶ 32-34 (charging Laurent with racketeering conspiracy in connection with predicate acts).) Laurent is also charged in connection with Duncan's death in Count Five, which alleges murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a). (Id. ¶¶ 39-40.)

[4] In connection with this testimony, the Government also indicates that the police officer who recovered the handgun will testify that his search of Laurent's bedroom resulted from a "shots-fired" call to the NYPD. (Gov't's Reply at 4 n.5.) Therefore, the Government argues, "[w]ithout allusion to the firing of the gun earlier in the day, the jury will be left to speculate why the police officer was present at and entered Laurent's room." (Id.)

5

New York State jury verdict acquitting him of possession of the very weapon at issue "constitutes a conclusive finding" that he did not possess the handgun found in his box spring. (Id.) In that case, Laurent was charged with, among other crimes, criminal possession of a weapon in the fourth degree, in violation of New York Penal Law § 265.01. (See Donna R. Newman Decl., Ex. B, Indictment, People v. Laurent, No. 6052/10 (N.Y. Crim. Ct.) (Dkt. 178-2).) The court instructed the jury that a conviction on this charge required proof that on June 21, 2010, Laurent (1) knowingly (2) possessed—meaning that he had physical possession or otherwise exercised dominion or control over—a firearm (3) that was capable of discharging ammunition. (See Newman Decl., Ex. A, Trial Tr. at 438:12-439:5, Laurent, No. 6052/10 (N.Y. Crim. Ct. 2012) (Dkt. 178-1).) Because the jury issued a verdict of not guilty, Laurent concludes, there is no factual support for permitting the inference that he owned or even possessed the handgun on the basis that the weapon was discharged from his bedroom while he was present. (Def.'s Resp. in Opp'n at 2.) Laurent contends that as a result, under Rule 401, the events of June 21, 2010, are not relevant to the instant prosecution. (Def.'s Sur-Reply at 3-4.)

Laurent's arguments, however, are unavailing. That Laurent was not convicted in state court of having possessed the handgun on that date does not mean evidence with respect to the events of June 21, 2010, is not relevant here. To the contrary, this evidence clearly constitutes circumstantial proof of Laurent's involvement in a charged crime.[5] Under Rule 401, evidence is relevant if it has "any tendency" to make more or less probable a fact "that is of consequence in determining the action." Fed. R. Evid. 401. Here, there can be no dispute that whether Laurent owned or possessed the handgun used in the murder of Brent Duncan two days earlier is of consequence in this prosecution. See Fed. R. Evid. 401(b). Laurent is charged in connection

---

[5] See United States v. MacPherson, 424 F.3d 183, 190 (2d Cir. 2005) (noting that "the law draws no distinction between direct and circumstantial evidence in requiring the government to carry its burden of proof").

6

with Duncan's murder in multiple counts of the Indictment. (See Indictment ¶¶ 7-8, 12, 32-34, 39-40.) As a result, if the Government can establish that Laurent possessed or owned the murder weapon, this would tend to make it more probable that he committed the murder with which he is charged. See Fed. R. Evid. 401(a).

Moreover, testimony regarding the events of June 21, 2010, would tend to make it more probable that Laurent possessed or owned the weapon used in Brent Duncan's murder. See id. This testimony would show that Siedel Chesney—who lived in the room adjacent to Laurent's bedroom—told responding police officers that after hearing a gunshot, he saw a bullet enter his apartment through the wall. (See May 5, 2014, Mem. & Order at 5-6.) Shortly after this shot was fired, Laurent came into Chesney's room, apologized to Chesney, and requested that Chesney not call the police because Laurent was on probation. (Id. at 6.) Chesney called the police anyway, and in responding to this call, the officers found a bullet hole in Chesney's wall, a bullet fragment on the ground, and eventually, the loaded handgun inside the box spring of Laurent's bed. (Id. at 6-7.) Consequently, this evidence tends to make it more probable that Laurent possessed and owned the handgun he is alleged to have used in committing a murder charged in this case.[6] See Fed. R. Evid. 401(a).

While a previous state court conviction on charges that he possessed the handgun on June 21, 2010, would render it highly probable that Laurent possessed or owned the murder weapon,

---

[6] As Laurent points out, this testimony would also tend to show that there were two other men in the room when the weapon was discharged. (Def.'s Reply Mem. at 14; see also May 5, 2014, Mem. & Order at 6.) Laurent further contends that at trial in the state case, there was a lack of ballistics evidence linking the handgun to the bullet fragment found in Chesney's room. (Id.) While these observations tend to cast doubt on whether Laurent in fact fired the handgun on June 21, 2010, they reflect on the weight of the evidence, not its relevance, and therefore have no bearing on whether this testimony is admissible. See United States v. Basciano, 430 F. Supp. 2d 87, 92 (E.D.N.Y. 2006) ("'Evidence need not be conclusive in order to be relevant.' 'Nonconclusive evidence should still be admitted if it makes a proposition more probable that not; factors which make evidence less than conclusive affect only weight, not admissibility.'" (quoting Contemporary Mission v. Famous Music Corp., 557 F.2d 918, 927 (2d Cir. 1977); United States v. Schultz, 333 F.3d 393, 416 (2d Cir. 2003))). In this context, the court notes evidence that Laurent came into Chesney's room to apologize for the gunshot tends to support the inference that it was Laurent who fired the weapon—and therefore possessed or owned it—and not the other two men.

7

the standard for relevancy under Rule 401—whether the evidence has <u>any tendency</u> to make a consequential fact more or less probable—is far lower. <u>See</u> <u>id.</u> Moreover, as a matter of collateral estoppel, Laurent's acquittal on related criminal weapons possession charges in state court—as the Government points out—has no preclusive effect on a subsequent federal prosecution, even if Laurent were facing identical charges, which he is not. (<u>See</u> Gov't's Reply at 5 (citing <u>United States v. Peterson</u>, 100 F.3d 7, 12 (2d Cir. 1996); <u>United States v. Giovanelli</u>, 945 F.2d 479, 491 (2d Cir. 1991)).) Although it is certainly true that one "does not <u>necessarily</u> own a weapon which he discharges" (Def.'s Sur-Reply at 3), there is no Rule 401 basis for preventing the Government from arguing to the jury that Laurent's ownership or possession of the murder weapon can be inferred from evidence that he fired the weapon in his bedroom two days after a murder that he is alleged to have committed with that weapon took place. <u>See also</u> <u>United States v. White</u>, 692 F.3d 235, 247 (2d Cir. 2012) ("For, as we have expressly stated: '[t]he length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved . . . does not render the evidence irrelevant.'" (quoting <u>United States v. Ravich</u>, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.))). As a result, the court determines that testimony regarding the events of June 21, 2010, is relevant as probative circumstantial evidence of Laurent's guilt with respect to a charged crime—the murder of Brent Duncan.

      2.     <u>Rule 403</u>

Laurent next argues that even if testimony regarding the events of June 21, 2010, is relevant, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, juror confusion, and wasted time, and that the testimony should therefore be excluded under Rule 403. (Def.'s Sur-Reply at 4.) <u>See</u> Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Laurent argues that this testimony is of limited probative value, in part, for the same reason he maintains it is irrelevant: because a New York State jury found him not guilty of criminal possession of a weapon in connection with the firearm discharge on June 21, 2010. (Def.'s Resp. in Opp'n at 2 (citing Laurent, No. 6052/10 (N.Y. Crim. Ct. 2012).) In particular, Laurent points out that there were two other men in the room with him, and that there was a lack of ballistics evidence linking the handgun to the bullet fragment found in Chesney's room. (Def.'s Reply Mem. at 14.) He also contends that this testimony lacks any probative value because there is no evidence that these events were connected to Six Tre or the alleged racketeering conspiracy in this case. (Def.'s Resp. in Opp'n at 2.)

With respect to the other side of the Rule 403 analysis, Laurent argues that this evidence is "significantly more prejudicial than probative because of the inherent risk that the jury will draw a conclusion that Mr. Laurent is reckless and trigger happy and conclude such an individual therefore, committed the murder of Brent Duncan and the other violent acts alleged in the Indictment." (Def.'s Reply Mem. at 15.) Furthermore, because he will contest this evidence, Laurent insists that resolution of these issues would require a "trial within a trial" that will "add days, if not weeks to the trial," and would "surely confuse the jury as to what issues they are charged with deciding." (Id.; Def.'s Sur-Reply at 4.)

To the extent Laurent maintains that "this incident has no[] probative value as to any issue in the case since it is not particularly relevant to the case" (Def.'s Resp. in Opp'n at 2), his argument is readily dismissed in light of the court's determination with respect to relevance. See supra Part II.A.1. Evidence tending to show that Laurent owned or possessed the murder

9

weapon is substantially probative of his guilt with respect to that murder; and evidence that tends to show that Laurent fired the murder weapon just two days after the murder is alleged to have taken place makes it more probable that he owned or possessed the murder weapon. Id. Moreover, that there is no evidence the events of June 21, 2010, were connected to Six Tre or the alleged racketeering conspiracy is irrelevant, as this testimony constitutes circumstantial evidence with respect to a charged crime, i.e., the murder of Brent Duncan. (See Indictment ¶¶ 7-8, 12, 32-34, 39-40.) Therefore, the court easily rejects Laurent's arguments with respect to the probative value of the testimony.

Laurent's claims with respect to the danger of unfair prejudice, confusion, and wasted time, however, deserve further attention. With respect to the first issue, it is well established that the introduction of probative evidence does not generate unfair prejudice under Rule 403 where the evidence does not involve "conduct more serious than the charged crime." United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000); see also United States v. Desposito, 704 F.3d 221, 234 (2d Cir. 2013) (same). Here, Laurent is charged with murder, attempted murder, multiple robberies, and other related crimes. (See Indictment ¶¶ 11-25, 35, 39-46.) Therefore, Laurent cannot seriously contend that testimony regarding his reckless—and possibly even accidental—discharge of the handgun involves conduct more severe than that underlying the crimes with which he is charged. See, e.g., United States v. Slaughter, 248 F. App'x 210, 212-13 (2d Cir. 2007) (summary order) (in prosecution for receipt of firearm after a prior felony conviction, district court did not abuse discretion under Rule 403 in admitting evidence of defendant's prior possession of semiautomatic handgun and matching ammunition) (citing United States v. Zappola, 677 F.2d 264, 270 (2d Cir. 1982)). In this context, the court affords little weight to Laurent's contention that there is an inherent risk the jury will draw the conclusion that Laurent

committed the murder because he recklessly discharged a firearm in his bedroom and thus "has no regard for human life." (Def.'s Reply Mem. at 15.) The court thus concludes that the admission of testimony regarding the events of June 21, 2010, would not create any meaningful danger of unfair prejudice against Laurent.

The court also finds that the danger of juror confusion and wasted time—even in light of the possibility of unfair prejudice described above—does not justify exclusion of this testimony under Rule 403. Presumably, Laurent's concern is that introduction of this testimony would confuse jurors into thinking that their task is to determine whether Laurent fired the handgun on June 21, 2010, instead of determining whether he committed the murder of Brent Duncan. This concern, however, is largely unfounded. Laurent has not provided any reason why the jury would not understand that the purpose of this testimony is to suggest that he possessed the murder weapon just two days after Duncan's murder, which makes it more likely that he committed the murder, as charged in the Indictment. Moreover, the risk that the jury would convict Laurent of another charged crime as a result of any confusion is limited: Laurent is not charged with reckless endangerment, and the Government has not suggested that the events of June 21, 2010, pertain to any other charged crime. Furthermore, the sequence of events involved in the proffered testimony is relatively simple and straightforward. See supra Part II.A.1. And in any event, "Rule 403 favors admissibility: evidence is only excluded when its probative value is <u>substantially outweighed</u> by the prejudice of jury confusion." White, 692 F.3d at 247 (emphasis in original). Therefore, the court finds the danger of the jury "confusing the issues" to be truly minimal. Fed. R. Evid. 403.

Finally, Laurent is surely correct that the introduction of this testimony will lengthen the upcoming trial. (See Def.'s Sur-Reply at 4.) The court does not agree, however, that its

11

admission will result in "wasting time." Fed. R. Evid. 403. Laurent, along with Defendants Yassa Ashburn and Trevelle Merritt, are charged by a fourteen count indictment with numerous racketeering crimes committed in connection with their membership in Six Tre between April 2008 and October 2011, including three murders, two attempted murders, and several robberies (see generally Indictment); and the Government has previously indicated that its case-in-chief will last three to four weeks.[7] Consequently, even spending a handful of days during these several weeks to determine whether Laurent possessed the very weapon used in the murder he is charged with committing would not serve to waste the jury's time.

Ultimately, the court is mindful that the admissibility of evidence, including under Rule 403, is a matter committed to the court's "broad discretion." See United States v. Contorinis, 692 F.3d 136, 144 (2d Cir. 2012). In this context, the court determines that the danger of unfair prejudice, juror confusion, and wasted time—considered together—does not substantially outweigh the probative value of testimony regarding the events of June 21, 2010. See Fed. R. Evid. 403. Accordingly, Laurent's motion to exclude this evidence under either Federal Rule of Evidence 401 or 403 is DENIED.

### B. Motion to Suppress or Exclude Ammunition and Bullet Fragment

Having concluded that the Government's proffered testimony regarding the events of June 21, 2010, is both relevant and admissible, the court next considers Laurent's motion to suppress or exclude the ammunition found in the magazine of the handgun and to exclude the bullet fragment recovered from the floor of the room adjacent to Laurent's bedroom.

---

[7] The court notes that jury selection alone is expected to last approximately two weeks.

12

1. <u>Ammunition</u>

Laurent has challenged the admissibility of the 13 rounds of ammunition as (1) having been unlawfully seized in violation of the Fourth Amendment of the Constitution, and (2) irrelevant under Federal Rule of Evidence 401. The court takes up each argument in turn.

    *a.*    *Fourth Amendment*

With respect to his first argument, Laurent contends that the Government has not established that the magazine was inside the handgun at the time the weapon was seized from his room on June 21, 2010. (Def.'s Reply Mem. at 16-17.) As a result, although he recognizes that this court has previously denied his motion to suppress the handgun itself (see May 5, 2014, Mem. & Order), Laurent argues that the court's decision to admit the handgun does not apply to the ammunition. (Def.'s Reply Mem. at 16-17.) Accordingly, Laurent contends that the ammunition should be suppressed because it was obtained pursuant to a warrantless search in violation of the Fourth Amendment. (Id.) In the alternative, he maintains that the court should conduct an evidentiary hearing to determine the location of the magazine at the time it was seized. (Id. at 17.)

The court finds Laurent's arguments to be meritless. It is well established that "[a] defendant moving for the suppression of evidence seized following a search is not automatically entitled to an evidentiary hearing." United States v. Shaw, 260 F. Supp. 2d 567, 670 (E.D.N.Y. 2003) (citing United States v. Barrios, No. 97-1364, 2000 WL 419940, at *1 (2d Cir. Apr. 18, 2000) (summary order)). Rather, the defendant must show that there are disputed issues of material fact before an evidentiary hearing is required. See, e.g., United States v. Dupree, 781 F. Supp. 2d 115, 147 (E.D.N.Y. 2011) (noting this showing must be supported by an affidavit from an individual with personal knowledge of the contested facts). Critically, however, Laurent has failed to demonstrate the existence of any disputed fact regarding the ammunition. In fact,

13

Laurent's own submission illustrates the lack of ambiguity with respect to the location of the magazine at the time the handgun was seized.

At a suppression hearing in connection with Laurent's prosecution in state court, the NYPD officer who found the handgun in Laurent's box spring testified that the weapon was loaded when the Evidence Collection Team ("ECT") recovered it. (See Donna R. Newman Aff. in Supp. of Def.'s Omnibus Mot., Ex. C, Hr'g Tr. at 10:6-11:7, People v. Laurent, No. 6052/10 (N.Y. Crim. Ct. June 29, 2012) (Dkt. 116-3) (reflecting officer's testimony that he saw ECT check the weapon to determine whether it was loaded).) Moreover, at the trial in Laurent's state case, the officer who collected and vouchered the weapon testified that after he photographed the handgun inside the box spring, he unloaded it. (See Donna R. Newman Aff. in Supp. of Def.'s Reply Mem., Ex. B, Trial Tr. at 147:17-23, Laurent, No. 6052/10 (N.Y. Crim. Ct. 2012) (Dkt. 178-2).) He testified further that he "withdrew the magazine, which happened to be inside the firearm," and at that point observed that there were 13 9-mm rounds in the magazine, and no rounds in the chamber. (Id. at 148:2-14 (explaining that for his safety and that of others present, the officer removed the ammunition to prevent an accidental discharge).) He then testified that he vouchered the gun and the ammunition together at the 67th Precinct. (Id. at 161:2-25.)

Consequently, the court agrees with the Government that it is "abundantly clear that the 13 rounds at issue were in the firearm when they were recovered." (Sept. 19, 2014, Gov't Ltr. at 3.) Because Laurent has failed to demonstrate the existence of a disputed fact with respect to this issue,[8] his request for an evidentiary hearing is DENIED. Furthermore, since the location of

---

[8] In support of his motion, Laurent notes that the detective who performed the operability test on the handgun testified that he received the magazine and handgun separately. (Def.'s Reply Mem. at 17 (citing Trial Tr. at 260-61).) The detective's testimony reflects, however, that while the magazine was not inside the handgun when he received it, they were both inside the same envelope. (Trial Tr. at 260:22-261:5.) As the Government points out, this is consistent with the recovering officer's testimony "that he first unloaded the firearm before transporting it back to the precinct and vouchering the recovered items." (Sept. 19, 2014, Gov't Ltr. at 3 n.2.)

14

the magazine at the time of recovery has been established, the court hereby determines that its previous finding—that the seizure of the handgun was lawful under the Fourth Amendment—applies equally to the 13 rounds of ammunition found inside the handgun. (See May 5, 2014, Mem. & Order at 13.)

### b. Relevance

Laurent also argues that even if it was constitutionally obtained, the ammunition is nevertheless irrelevant and therefore should be excluded pursuant to Federal Rule of Evidence 402. (Def.'s Reply Mem. at 11.) See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Specifically, Laurent contends that because the magazine holds 15 rounds, "and at least 3 rounds were fired into Brent Duncan while more rounds were found on the ground at the crime scene," "the 13 rounds of ammunition found in the magazine do not tend to prove a material issue." (Def.'s Reply Mem. at 11.) By implication, Laurent appears to assert that if the handgun is in fact the murder weapon, at least some of these rounds were loaded in the magazine after Duncan's murder, in which case the fact that it was recovered with 13 rounds of ammunition on June 21, 2010, does not make it more probable that the weapon was used on June 19. See Fed. R. Evid. 401(a). In response, the Government points out that because it was recovered two days after the murder of Brent Duncan is alleged to have taken place, evidence that the gun was loaded is probative of whether it was in fact used in that murder, which Laurent is charged in the Indictment as having committed. (Gov't's Reply at 4; see also Indictment ¶¶ 7-8, 12, 32-34, 39-40.)

Laurent is correct that the 13 rounds of ammunition do not make it more probable that the handgun was used in the murder of Brent Duncan on June 19, 2010. Given that (1) the capacity of the magazine is 15 rounds, (2) more than 3 rounds were fired in connection with Duncan's murder and at least one round was fired in Laurent's bedroom on June 21, 2010, and (3) the

15

handgun contained 13 rounds when it was recovered, if this was in fact the murder weapon, additional ammunition must have been loaded into the weapon between the murder and the handgun's recovery. (See Def.'s Reply Mem. at 11.) In this context, evidence that the gun was loaded when recovered is only probative of whether ammunition was loaded between Duncan's murder on June 19 and June 21, 2010, and it does not tend to prove that it was used in connection with the murder.

Nevertheless, this evidence is relevant and admissible for a different purpose. The court has already determined that testimony regarding the events of June 21, 2010, is relevant evidence with respect to whether Laurent owned or possessed the murder weapon, a significant issue at trial. See supra Part II.A.1. Yet Laurent disputes whether the shooting on June 21, 2010—which this testimony describes—even occurred. (See Def.'s Reply Mem. at 14 ("There is not even a preponderance of the evidence to establish Mr. Laurent committed these acts. . . . It remains unlikely that Mr. Laurent discharged a weapon.").) That the handgun was loaded when it was recovered minutes after the alleged discharge (see Gov't's Reply at 4), tends to prove that this shooting did in fact take place. As a result, the ammunition is relevant evidence—making it more probable that Laurent fired the handgun on June 21, 2010, which is a fact of consequence insofar as it supports the inference that Laurent, and not someone else, owned or possessed the weapon used in the murder of Brent Duncan. See Fed. R. Evid. 401; see also United States v. White, 692 F.3d 235, 247 (2d Cir. 2012) (noting "[t]he length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved . . . does not render the evidence irrelevant" (internal quotation marks omitted)). Because the ammunition is relevant

16

and therefore admissible,[9] Laurent's motion to suppress or exclude the ammunition is DENIED.[10]

### 2. Bullet Fragment

Finally, Laurent moves to exclude the bullet fragment recovered from Chesney's room on the grounds that it, too, is irrelevant and therefore inadmissible under Rule 402. (Def.'s Reply Mem. at 2-3.) In support, Laurent notes that at his state trial, there was a lack of evidence to demonstrate a forensic connection between the handgun and the bullet fragment. (Id. at 5, 14 (citing Trial Tr. at 215, 219).) As a result, he concludes that the trial evidence "cast doubt as to the very act of the shooting which Mr. Chesney alleged had occurred." (Id. at 14 (further claiming "[t]he evidence suggested or at least was not conclusive that a gun was discharged in the room").) As the court explained above, however, because Laurent disputes his ownership or possession of the handgun by challenging whether the handgun was ever discharged on June 21, 2010, the bullet fragment constitutes relevant evidence because it tends to support Chesney's account of the events that day. In other words, evidence that a bullet fragment was recovered from Chesney's room minutes later (Gov't's Reply at 4), makes it more probable that Laurent did in fact discharge the handgun through his bedroom wall on June 21, 2010. See Fed. R. Evid. 401. This, in turn, makes it more likely that Laurent possessed the murder weapon two days after Duncan's murder, which bears directly on his guilt with respect to a charged crime.

---

[9] Although Laurent maintains this evidence is substantially more prejudicial than probative (Def.'s Reply Mem. at 3-4), he has not suggested any basis for so finding, and the court discerns none. As a result, the court further concludes, pursuant to Federal Rule of Evidence 403, that the probative value of the ammunition is not substantially outweighed by the danger of any unfair prejudice.

[10] Even if the ammunition were not relevant as direct evidence, it would still be admissible as evidence of opportunity under Rule 404. See Fed. R. Evid. 404(b)(2). In the same way that Laurent's possession or ownership of the handgun demonstrates his access to the weapon allegedly used in Brent Duncan's murder, evidence that the handgun was loaded supports the inference that Laurent had access to the ammunition necessary to carry out the murder with that weapon. See supra note 2. While introduction of this evidence under Rule 404 would require a limiting instruction, because the court has determined that the ammunition constitutes direct evidence, no such instruction is necessary. See Fed. R. Evid. 105.

(See supra Part II.A.1.) Therefore, the bullet fragment is relevant evidence. See Fed. R. Evid. 401. Because its probative value is not substantially outweighed by the danger of any unfair prejudice,[11] Laurent's motion to exclude the bullet fragment is DENIED.

## III. CONCLUSION

Accordingly, for the reasons set forth above:

- Laurent's motion to exclude testimony related to the events of June 21, 2010, is DENIED;

- Laurent's motion to suppress or exclude the 13 rounds of ammunition found in the magazine of the handgun at issue is DENIED, as is his request for an evidentiary hearing; and

- Laurent's motion to exclude the bullet fragment is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
January 9, 2015

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[11] See supra note 9, which applies equally to Laurent's motion to exclude the bullet fragment.