UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA

-against-

YASSER ASHBURN, JAMAL LAURENT, and
TREVELLE MERRITT,

                               Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CR-0303 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

This Memorandum and Order addresses further motions in limine filed by Defendant Jamal Laurent. The court presumes familiarity with the charges and alleged conduct underlying this racketeering prosecution. First, the court addresses Defendant Laurent's motion to exclude evidence that relates to his imprisonment in state and federal prisons. (See Def.'s Reply in Further Supp. of Mot. for Reconsideration ("Def.'s Reply") (Dkt. 371).) This motion is CONDITIONALLY GRANTED IN PART and DENIED IN PART. Second, the court considers Laurent's motion for a mistrial and severance. (Def.'s Mot. for Mistrial ("Mot.").)[1] For the reasons that follow, this motion is DENIED.

I.     MOTION TO EXLUDE EVIDENCE RELATED TO INCARCERATION

The Government initially filed a motion seeking to preclude Laurent from introducing evidence of a prior acquittal in state court. (See Mot. in Limine to Preclude Reference to Prior Prosecutions and Acquittals (Dkt. 307).) The court granted this motion. (Feb. 19, 2015, Mem. & Order (Dkt. 354).) Laurent then sought reconsideration (Mot. for Reconsideration (Dkt. 366)), which the court denied (Feb. 24, 2015, Order). In response to Laurent's motion for reconsideration, however, the Government outlined four categories of evidence it would seek to

---

[1] Laurent has not yet filed this motion on the court's electronic case filing system, but has provided it to the Government and to the court by hand delivery.

1

introduce, each of which indicated (implicitly or explicitly) that Laurent had been incarcerated. (See Gov't's Resp. in Opp'n to Mot. for Reconsideration ("Gov't's Resp.") (Dkt. 368).) In reply to the Government's response, Laurent further requested that this evidence relating to his incarceration be excluded. (See Def.'s Reply.) In the following discussion, the court addresses the admissibility of each item in turn.

### A. Photographs of Laurent's Tattoos

The first category of evidence consists of four photographs of tattoos on Laurent's hands. (See Gov't's Resp. at 1-2.) As the parties are aware, the court requested that the Government crop out those portions of the photographs that show shackles around Laurent's waist and handcuffs on his wrists. (Feb. 25, 2015, Tr. at 556:6-8.) The court determined pursuant to Federal Rule of Evidence 403 that the prejudicial effect of these portions of the photographs substantially outweighed any probative value. Since the photographs have now been cropped, Laurent no longer contests their admissibility. (Id. at 631:8-25.) As a result, the motion is DENIED as moot.

### B. Testimony of Mark Puglielli Regarding Rikers Island Interview

Second, the Government expects Mark Puglielli, formerly a detective with the West Hartford Police Department, to testify that he interviewed Laurent at Rikers Island Prison on December 2, 2010. (See Gov't's Resp. at 2.) According to the Government, during the interview, Puglielli showed Laurent a picture of Keegan Estrada, who is alleged to be one of Laurent's co-conspirators in this case. (Id.) Laurent stated that he was "positive" he did not recognize the person in the photograph. (Id.) Laurent was then confronted with the fact that Estrada was on Laurent's visitor list at the prison. (Id.) In response, Laurent admitted that he lied and was just "testing them." (Id.)

2

Laurent's admission regarding his relationship with Keegan Estrada, and the fact that he was visited at Rikers by Estrada, is direct evidence of the relationship between co-conspirators, and is relevant for that reason. See United States v. Diaz, 176 F.3d 52, 79-80 (2d Cir. 1999). Laurent's incarceration at Rikers, however, is inseparable from and thus inextricably intertwined with this evidence. See, e.g., United States v. Price, No. 05-CR-492 (NGG), 2009 WL 973370, at *1 (E.D.N.Y. Apr. 10, 2009) (citing United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000)). As a result, the court must engage in the balancing test prescribed by Rule 403. Because the court determines that the probative value of this evidence is not substantially outweighed by any risk of unfair prejudice, the Government will be permitted to introduce this testimony.[2] See Fed. R. Evid. 403. Accordingly, Laurent's motion to exclude this evidence is DENIED.

### C. Testimony of Keegan Estrada[3] Regarding Laurent's Incarceration

Third, the Government anticipates that cooperating witness Keegan Estrada will testify that he conspired with Laurent and Ricky Hollenquest to commit several armed robberies by luring victims through Craigslist. (Gov't's Resp. at 2.) The Government further expects Estrada to testify that Laurent was incarcerated beginning in August 2010, and that as a result, Laurent was not involved in the scheme from that point forward. (Id.) According to the Government, this evidence is important because on October 17, 2010, during the course of one of the robberies, Estrada and Hollenquest were arrested, but Laurent was not. (Id.) The Government contends that without evidence that Laurent was incarcerated, and thus unable to participate in the robbery, "the jury will be left to wonder why Laurent was not with Estrada and Hollenquest

---

[2] For the same reason, testimony from Keegan Estrada that he visited Laurent at Rikers is admissible. (See Gov't's Resp. at 2.) The Government has also indicated that Estrada will testify that Laurent told him that the "feds" had visited Laurent while he was in prison. Since the court will permit the Government to introduce the fact of Laurent's incarceration in connection with the interview by law enforcement on December 2, 2010, there is no basis for excluding this testimony.

[3] Estrada's name was redacted in this portion of the Government's papers (see Gov't's Resp. at 2), but was not redacted in Laurent's reply (see generally Def.'s Reply).

3

during the perpetration of that robbery." (Id.) In short, the Government seeks to introduce evidence that Laurent did not participate in the October 17, 2010, robbery with Estrada and Hollenquest because he was incarcerated.

In United States v. Mauro, 80 F.3d 73 (2d Cir. 1996), the Second Circuit found that a district court had not abused its discretion under Rule 403 by admitting evidence of a defendant's incarceration as evidence of motive, at least where the Government did not introduce the reason for that incarceration, and the jury was warned that the defendant's incarceration was not to be considered as proof of criminal propensity, but only as background information and as proof of motive. See id. at 76 (noting, however, that the probative value of the defendant's incarceration was slight and might have been outweighed by prejudice). After Mauro, some district courts in this circuit have admitted evidence of a defendant's incarceration for the very reason the Government seeks to do so here. See, e.g., United States v. Cummings, --- F. Supp. 3d. ---, No. 12-CR-31 (VM), 2014 WL 5870254, at *4 (S.D.N.Y. Nov. 6, 2014). Others have not. See, e.g., United States v. Pena, 978 F. Supp. 2d 254, 262-63 (S.D.N.Y. 2013). Clearly, this is a matter of the district court's discretion.

Here, Laurent argues that there is no reason that he should be expected to have participated in every Craigslist robbery, just as the Government has not sought to prove that Laurent was involved with every jewelry store robbery—even though Laurent is charged with Hobbs Act robbery conspiracy in connection with both robbery conspiracies. (See Def.'s Reply at 2; Superseding Indictment (S-5) (Dkt. 271) ¶¶ 44-45.) As a result, Laurent contends that evidence of his incarceration on October 17, 2010, is not admissible because it is overly prejudicial. (See Def.'s Reply at 1.) For these reasons, the court agrees that at present, the

4

probative value of evidence of Laurent's absence from the October 17, 2010, robbery due to his incarceration is substantially outweighed by the risk of unfair prejudice. See Fed. R. Evid. 403.[4]

This balance changes, however, if Laurent opens the door to this testimony through his own arguments. If the defense so much as suggests to the jury that the Government's failure to prove that Laurent was involved in every Craigslist robbery tends to show that he was not involved in the Craigslist robbery conspiracy, the Government will be permitted to introduce evidence that Laurent did not participate in the October 17, 2010, robbery because he was incarcerated beginning in August 2010. In other words, Laurent is not permitted to suggest to the jury that his non-participation in the October 17, 2010, robbery is evidence that he was not a member of the conspiracy. If Laurent so argues, at that point the probative value would no longer be substantially outweighed by the risk of unfair prejudice under Rule 403. Accordingly, Laurent's motion to exclude this evidence is CONDITIONALLY GRANTED.

### D.     Emails and Prison Calls

Fourth, the Government seeks to introduce evidence of emails and prison calls recorded while Laurent and his co-defendants have been imprisoned pending trial in this case. (Gov't's Reply at 3.) According to the Government, these communications establish that the Defendants have been communicating with each other, as well as with other members of the Six Tre Folk Nation. (Id.) The Government also expects these emails and phone calls will corroborate witness testimony regarding certain aliases used by the Defendants. (Id.)

Laurent does not appear to challenge the relevance or admissibility of these calls. In any event, they are clearly admissible. Accordingly, the court DENIES Laurent's motion to exclude

---

[4] While evidence that Keegan Estrada visited Laurent at Rikers on September 1, 2010 (see Gov't's Resp., Ex. B, Visit Search Results (Dkt. 368-2) at 2), is admissible, this does not require the court to admit evidence that Laurent was incarcerated on October 17, 2010. This is true even though the Government is also permitted to introduce evidence that Laurent was incarcerated on December 2, 2010, during his interview with Puglielli. See supra Part I.B.

this evidence. As Laurent requests (see Def.'s Reply at 2), however, the Government is ORDERED to disclose to the Defendant those calls and emails it intends to offer into evidence. See Fed. R. Crim. P. 16(a)(1)(E).

### E. Limiting Instruction

Because the court has determined that the fact of Laurent's incarceration is admissible for certain purposes, the court will issue certain limiting instructions to account for the risk of unfair prejudice. Thus, the court will direct the jury not to draw any inferences of guilt from the fact of the Defendant's prior incarceration. See, e.g., Cummings, 2014 WL 5870254, at *4. The court will further instruct the jury that Laurent's incarceration should not be considered as proof of criminal propensity, but rather, only as background information. See Mauro, 80 F.3d at 76.

## II. MOTION FOR MISTRIAL

Laurent also moves for a mistrial on the basis of five statements made by counsel for Defendant Trevelle Merritt during opening argument on February 23, 2015. (Mot. at 2.) According to Laurent, counsel's statements impermissibly suggested to the jury that Merritt named his co-conspirator in his statements to law enforcement, in violation of this court's Orders pursuant to Bruton v. United States, 391 U.S. 123 (1968), and its progeny. (See id.) As a result, Laurent contends a mistrial is warranted to preserve his Sixth Amendment right to confrontation. (Id.)

### A. Legal Standard

Courts have the power to declare a mistrial "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." United States v. Klein, 582 F.2d 186, 190 (2d Cir. 1978). "The decision to declare a mistrial is left to the 'sound discretion' of the judge, but 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and

obvious causes.'" United States v. Gilliam, 582 F. App'x 22, 24 (2d Cir. 2014) (summary order) (quoting Renico v. Lett, 559 U.S. 766, 774 (2010)). Moreover, "a mistrial is warranted only upon a showing of actual prejudice." United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004) (citing United States v. Abrams, 137 F.3d 704, 708-09 (2d Cir. 1998) (per curiam)).

**B.      Discussion**

Taking all of the circumstances into account, it is clear that a mistrial is not warranted. As an initial matter, Merritt's counsel did not suggest that Laurent was "the guy" Merritt knew. Nor did counsel explicitly state that Merritt provided the name of his co-conspirator to law enforcement. Instead, as the court has previously noted, counsel's use of the words "fingered" and "fingering"—along with his statement that the Government will not prove that Merritt "was anything other than forthcoming"—could have suggested that Merritt named his co-conspirator by a chain of inferences. Nevertheless, at this early point in the trial, the court discerns no basis for finding that the jury in fact made this unlikely inference.

First, given how difficult it was for the parties and the court to follow some of counsel's opening statement (see Trial Tr. ("Tr.") at 113)—indeed, precisely what counsel said was unclear without subsequent review of the transcript—the court has limited confidence that the jury even heard, let alone comprehended, the remarks that are the subject of Laurent's motion. Moreover, that Laurent himself did not object during the opening statement suggests either that the Defendant did not fully comprehend counsel's statements or that he determined any prejudicial effect was minimal.

Second, to the extent members of the jury even grasped these passing references, they could have easily drawn different conclusions from counsel's statements. For example, as the Government points out, jurors may have concluded that counsel's reference to Merritt being forthcoming meant that Merritt was honest about his and his co-conspirator's participation in the

7

crime. (See Gov't's Resp. in Opp'n to Mot. ("Gov't's Resp. to Mot.") (Dkt. 378) at 2.) This does not necessarily mean, however, that Merritt was forthright about the identity of his co-conspirator. In fact, under Second Circuit case law, the central premise of admitting an altered confession is that the statement "uses words 'that might actually have been said by a person admitting his own culpability in the charged conspiracy while shielding the specific identity of his confederate.'" United States v. Taylor, 745 F.3d 15, 28 (2d Cir. 2014) (quoting United States v. Jass, 569 F.3d 47, 62 (2d Cir. 2009)). With respect to counsel's use of the word "fingered," the jury may have inferred this meant Merritt put the blame on someone else, not necessarily that he provided the specific identity of the person who did it. See United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir. 1989) (upholding redacted statement where "the jury never knew that [the declarant's] original statement named names"). As this court has already found, there is nothing improper about the admission of a redacted confession in which the declarant indicates that one particular individual was his co-conspirator, or that the declarant knew his co-conspirator. (See Feb. 11, 2015, Mem. & Order (Dkt. 332) at 58.)

Third, the jury had no context through which it might understand counsel's references to "the other guy." As the Government points out, the jury has not yet heard any evidence with respect to the Dasta James robbery and murder; the jury has not yet heard any testimony regarding Merritt's statements themselves; and there has not been even the slightest suggestion that Laurent was involved in the murder. (See Gov't's Resp. to Mot at 2.) Instead, counsel's statements were but brief references in a long opening argument, which—as the court instructed the jury—is not evidence. (Tr. at 51:17-18.) See United States v. Sacco, 563 F.2d 552, 555 (2d Cir. 1977) ("Prejudice was most unlikely when [the district court] in [its] introductory remarks

had already informed the jury that what was said in opening statements was not to be considered as evidence."). Thus, any risk of unfair prejudice is quite limited. See Fed. R. Evid. 403.

Furthermore, at this point, any error that may have transpired can be sufficiently be cured by a limiting instruction. As the Second Circuit has explained, the ultimate question under Bruton is "whether the neutral allusion sufficiently conceals the fact of explicit identification to eliminate the <u>overwhelming probability</u> that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction." Jass, 569 F.3d at 61 (emphasis added). Here, there is nothing close to an overwhelming probability that the jury will be unable to follow a limiting instruction, which the court will issue at the appropriate time. Accordingly, Laurent's motion for a mistrial is DENIED.[5]

Nonetheless, counsel for Merritt is again instructed not to use any derivation of the phrase "fingered," which comes too close to implying that Merritt "named names." See Tutino, 883 F.2d at 1135. Instead—consistent with this court's numerous prior Orders—counsel might state, for example, that Merritt "told the officers that another guy did it," or pointed the officers to "someone else." If counsel wishes to emphasize Merritt's cooperation with law enforcement, counsel is encouraged to explain that Merritt was forthcoming about his own involvement—in other words, counsel should provide the full context for what he means by "forthcoming." (See Tr. at 103:25-104:2.) Counsel may <u>not</u>, however, suggest that Merritt "told all." (Cf. id. at 103:3-6.) The fundamental premise underlying Bruton substitution is that the altered statement reflects something a declarant might have actually said "while shielding the specific identity of his confederate." Taylor, 745 F.3d at 28 (internal quotation marks omitted). A declarant who shields the specific identity of his co-conspirator is plainly not "telling all." Finally, while

---

[5] For the same reasons, Laurent's motion for a severance is DENIED. (See also Feb. 11, 2015, Mem. & Order at 61-63 (denying prior motion for severance by Laurent on similar grounds)).

9

counsel may—but is not encouraged to—state that Merritt knew "to the exclusion of anyone else in the world" who shot Dasta James (see Tr. at 102:18-23), counsel may not state that Merritt told law enforcement who shot Dasta James "to the exclusion of anyone else in the world." If this were interpreted literally, the jury could draw the conclusion that Merritt told the officers the name of the person who shot Dasta James. Thus, counsel is explicitly prohibited from making this suggestion. See Taylor, 745 F.3d at 28.

As the court has pointed out in many prior Orders, defense counsel is reminded yet again that the fact that Merritt named his co-conspirator is not exculpatory evidence. See United States v. Yousef, 327 F.3d 56, 152-54 (2d Cir. 2003); United States v. Mussaleen, 35 F.3d 692, 696-97 (2d Cir. 1994). In other words, that Merritt provided the name of the shooter does nothing to mitigate his liability for felony murder. As the court has previously explained, the Government can prove that Merritt is liable for Dasta James's death under 18 U.S.C. § 924(j) if it can prove that Merritt aided and abetted the robbery and that James was killed during the course of that robbery. See United States v. Zayac, 765 F.3d 112, 116-18 (2d Cir. 2014). Thus, whether Merritt provided the name of the shooter to law enforcement officials is of no legal consequence with respect to his guilt. (See Superseding Indictment (S-5) ¶ 50 (Count Fourteen: Causing Death Through Use of a Firearm).)

Defense counsel may hope that the jury feels sorry for the Defendant, and perhaps even nullifies the charge against him on this basis. But in no way does Merritt's confession tend to prove that he is not liable for the murder, or for racketeering more broadly. Counsel is warned, once again, that any further reference to Merritt's original statements in violation of this court's orders will subject him to disciplinary action.

## III. CONCLUSION

Accordingly, for the reasons set forth above, Laurent's motion to exclude evidence related to his incarceration is CONDITIONALLY GRANTED IN PART and DENIED IN PART. Laurent's motion for a mistrial and severance is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
February 27, 2015

s/Nicholas G. Garaufis
/NICHOLAS G. GARAUFIS
United States District Judge